In re SHAMROCK COAL COMPANY, INC., Debtor.

Bankruptcy No. 83–03451 T.

United States Bankruptcy Court, E.D. Pennsylvania.

April 4, 1985.

Richard Caplan, Philadelphia, Pa., for Hescorp, Inc. and Auburn Construction Co., Inc.

Richard E. Fehling, Reading, Pa., for Marine Midland Bank.

Frederick L. Reigle, Reading, Pa., trustee.

## MEMORANDUM AND ORDER

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

Presently before us is the motion of Hescorp, Inc. and Auburn Construction Company, Inc. ("movants") for relief from the automatic stay and for return of property. The property in question is certain flocculation equipment which the movants installed in the debtor's coal processing plant. The motion is opposed by Marine Midland Bank, N.A. ("Bank"), which holds a first priority security interest in all of the debtor's equipment and machinery, and by the Chapter 11 debtor's trustee, although the latter has chosen not to file a brief in this matter.

The threshold, and potentially dispositive, issue in this case is whether the flocculation equipment is property of the debtor's bankruptcy estate. If not, the automatic stay of 11 U.S.C. § 362(a) does not apply to such property and the movants would be free to pursue any non-bankruptcy rights and remedies which they may have with respect to the property. For the following reasons, we conclude that the flocculation equipment is not property of the debtor's bankruptcy estate.

Almost all of the relevant facts are undisputed and need not be recited. The only important factual dispute, which will be discussed *infra*, is whether the movants installed the flocculation equipment on an experimental basis.

The critical dispute in this case is whether the flocculation equipment was the subject of a contract between the movants and

the debtor. If so, this equipment is property of the debtor's estate. If not, neither the debtor nor the debtor's estate ever acquired any interest in the equipment. We first note the undisputed fact that the flocculation equipment was not mentioned in either of the two written contracts between the movants and the debtor. The Bank, with regard to the first written contract, points out that this equipment was installed in an attempt, albeit unsuccessful, to satisfy the movants' contractual obligation to supply to the debtor a properly functioning centrifuge. Therefore, the Bank continues, the flocculation equipment must be considered to have been installed pursuant to the contract, thus making the equipment part of that contract. In this regard, contrary to the movants, the Bank contends that the flocculation equipment was not installed on a trial or experimental basis, but, rather, constituted an integral part of the bargained-for agreement between the movants and the debtor.

■ At the hearing of this matter, testimony was presented only on behalf of the movants. From this testimony, which we find credible, it is clear to us, and we so find, that the flocculation equipment was installed on an experimental or trial basis. When the experiment failed, this equipment became (and remains) completely useless to the construction and operation of the debtor's plant, the purposes for which the two aforementioned written contracts were entered into. In view of the above, as well as the undisputed fact that the flocculation equipment was purchased exclusively by the movants from a third party, with no involvement whatsoever in said purchase by the debtor, we conclude that the flocculation equipment was not part of the first written contract between the movants and the debtor.

The Bank also argues that a contract between the movants and the debtor exists with respect to the flocculation equipment by virtue of 13 Pa.C.S.A. § 2204(a), which states:

"A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract."

In this regard, the Bank contends that the debtor's refusal to allow the movants to remove the flocculation equipment from the debtor's premises demonstrated the debtor's acceptance of the equipment and the debtor's concomitant obligation to pay for it.[1] Thus, continues the Bank, the debtor's conduct showed that the debtor recognized the existence of a contract between it and the movants as to the flocculation equipment.

■ As to the movants' conduct, the Bank contends that they acquiesced in the debtor's refusal to allow them to remove the equipment for a period of time of approximately 1¾ years—from the date of the debtor's refusal to the date of the movants' filing of their present motion. The Bank submits that this "acquiescence" constitutes conduct by the movants showing that they acknowledged the debtor's acceptance of the equipment, thereby also recognizing the existence of a contract as to the equipment. The Bank cites no case law authority for this contention. Other than the passage of time, there is no evidence whatsoever, direct or indirect, that the movants acquiesced in the debtor's conduct. Under these circumstances, we conclude that the movants' conduct failed to show that they recognized the existence of a contract between them and the debtor as to the flocculation equipment.

For the foregoing reasons, we conclude that the flocculation equipment is not property of the debtor's bankruptcy estate.

This Memorandum constitutes the findings of fact and conclusions of law to the extent required by Bankruptcy Rule 7052.

ORDER

AND NOW, this 4th day of April, 1985, in accordance with the foregoing Memorandum, it is ORDERED that the flocculation

1. It is undisputed that the debtor has never paid any money to the movants for this equipment.

equipment described in Exhibit A of the movants' motion for relief from the automatic stay under section 362(d) and for return of property is not property of the debtor's bankruptcy estate and that this Court has no jurisdiction to enjoin or otherwise prevent the movants from exercising any non-bankruptcy rights and remedies which they may have with regard to the aforesaid flocculation equipment.